GRACE M. ROYAL, Administratrix,

*vs.*

BAR HARBOR AND UNION RIVER POWER COMPANY.

Hancock.   Opinion December 14, 1915.

*Amendment.     Contributory Negligence.     Direction of Verdict.*
*Electricity.     Exceptions.     Negligence.*

1. It is the duty of the presiding Justice to direct a verdict, when a verdict to the contrary could not be sustained.
2. An electrician handling electric wires which he knows are charged with electricity assumes the risk.
3. The case shows that the plaintiff's intestate, an electrician, knew that the wires he was handling were charged with a current of 2300 volts, and that he handled them without using any protective or safeguards. It is held that he assumed the risk, and that he was unquestionably guilty of contributory negligence.

On exceptions by both plaintiff and defendant. Exceptions by plaintiff overruled.

This is an action on the case to recover damages for the instant death of the plaintiff's intestate, alleged to be due to the negligence of the defendant. Plea, the general issue. The defendant demurred to the first count in plaintiff's declaration. The presiding Justice sustained said demurrer. The plaintiff was allowed to amend her declaration, and to the allowance of the amendment, the defendant excepted. At the conclusion of the evidence, the Justice presiding directed a verdict for the defendant. To which direction the plaintiff excepted.

The case is stated in the opinion.

*D. E. Hurley, and O. F. Fellows,* for plaintiff.

*Hale & Hamlin,* for defendant.

SITTING:  SAVAGE, C. J., KING, BIRD, HALEY, HANSON, JJ.

SAVAGE, C. J.   Action under Revised Statutes, Chapter 89, Section 9, for damages resulting from the negligence of the defendant, whereby the plaintiff's intestate was instantly killed.   The case comes before this court on the defendant's exceptions to the allowance of an amendment to the plaintiff's declaration, and on the plaintiff's exceptions to the direction of a verdict for the defendant.

It will not be necessary to consider the defendant's exceptions, for we think that the direction of a verdict for the defendant was right. And the overruling of the plaintiff's exceptions will finally dispose of the case.

It is well settled that in considering exceptions to the direction of a verdict, the only question is whether the jury would have been warranted by the evidence to find a verdict contrary to the one ordered.   If a verdict to the contrary could not be sustained, it is the duty of the presiding Justice to direct the verdict.   If such a verdict would be sustainable, the issue of fact should be submitted to the jury.   *Horigan* v. *Chalmers Co.,* 111 Maine, 111; *Johnson* v. *N. Y., N. H. & H. R. R.,* 111 Maine, 263; *Shackford* v. *N. E. Tel. & Tel. Co.,* 112 Maine, 204.   In this case there is not much conflict in the evidence.   And the facts upon which hinge the vital and decisive questions in the case seem to be not only undisputed, but indisputable.

The deceased was a competent, professional electrician of sixteen years experience.   He was employed by one Grindal to instal a three phase, 550 volts, 60 cycle electric motor, in a storehouse, to do the necessary inside wiring, and connect it with the motor.   The defendant company was engaged to supply the electric power for running the motor from its 2300 volt service wire which was strung on poles along the side of the Grindal building, the current for the building being reduced to 550 volts by a transformer.   The employment of the deceased required him to lay three wires from the motor upon the timbers of the building to and through the wall, and so to leave the ends of the wires that the defendant could connect with them wires from its service wire.   Prior to the accident the deceased had laid the wires in the building and the defendant had connected its wires on the outside.   But contrary to the usual practice, the plaintiff

had not placed switches or fuses in the wires, so as to guard by fuses against an unusual current, or to cut out the current by switches.

At the precise moment of the accident the electric current was on, and the deceased had begun to make the connection between the ends of the wires he had laid, from which the insulation had been removed, with the wires in the motor  At the instant, no one saw him.  But he was heard to moan, and he fell to the platform dead.  Deep burns were found across the fingers of both hands, one being burned nearly to the bone.  In her original declaration, which we refer to for a reason to be noted hereafter, the plaintiff alleged the negligence of the defendant to consist in the fact that "because of a leaky transformer and other defects in said wires and transformer the current that was suffered to run and be directed into the storehouse was not reduced to a voltage of 550 volts, but was of the full force and volume of 2300 volts," and that the deceased "believing that said wires running into said building carried only a voltage of 550 volts" attempted to connect the wire with the motor.  But in the count substituted by amendment, the one upon which this verdict rests, she alleged that the defendant was negligent in that it connected the wires outside, and thus let on the current without the knowledge of the deceased, that he did not know that the wires he was working on were connected with any of the defendant's wires, and that because of a leaky transformer the current was not reduced.

The plaintiff in argument stoutly contends that it was negligence on the part of the defendant to connect the wires before any switch or fuses had been put in, without any notice to the deceased, that the connection had been made.  And so it would be if such was the fact. But the defendant on the other hand contends, and its evidence, which is uncontradicted, tends to show, that on the morning of the day of the accident the deceased met the servants of the defendant whose duty it was to make the connection and asked if they had fuses and switches, and said he wanted to borrow a switch to put in; that they told him they had none; and that he told them "to go ahead and connect up the line, and that he would look out for the inside of it." If this story it true, it cannot be said that there was any negligence as to him if they proceeded to do as he told them to do.  The plaintiff says, however, that the witness who narrated this interview, though not contradicted, is impeached by a somewhat different

account which he gave at another time with respect to what was said about fuses and switches.   But as will be seen it is not necessary further to consider that phase of the case.

We will say in passing that there is no evidence that warrants the conclusion that the transformer leaked, or that any of the defendant's wires were defective, or that any stronger current than 550 volts passed into the building.   The plaintiff's case as to negligence of the defendant must rest upon the proposition that the defendant connected the wires before they were prepared for the connection, and without notice to, or knowledge of, the deceased.

Now, whatever may have been the negligence of the defendant in this respect, if the deceased knowingly assumed the risk, or was guilty of contributory negligence, the plaintiff cannot recover.   A careful study of the case compels us to the conclusion that the deceased did know that the wires were connected, and that the current was on. And if he did know that, and yet undertook to handle wires charged as these were, he did it at his own risk.   And, in that case, if he attempted to handle the wires without any protection or safeguard, as he did, it was beyond question contributory negligence.

The wires were connected at ten o'clock in the forenoon, and it does not appear that the deceased was in the building at the time. The accident occurred four hours later.   Though this shows that he had an opportunity to notice the connection, it shows nothing more.   But the very idea of connecting the wires to the motor presupposes that the current was on.   The work could not be done properly until the current was on.   The testimony of expert witnesses, one on each side of the case, shows that the wires cannot be connected properly, or with certainty as to position, unless there is a current on.   There are three wires and three connections.   The direction in which the motor will revolve depends upon which wire is connected at each of the several connections.   Connecting one wire does not start the motor.   Connecting a second wire does not start it. Connecting the third wire, if the current is on, will start it.   But it may revolve one way, or it may revolve the other way.   If it revolves the wrong way, or contrary to the way in which in the particular case it is desired to revolve, the wires, or two of them, at least, have to be transposed.   And there is no way, so is the evidence, by which it can be known before hand, which way it will revolve.   It can be

ascertained only by a test under current. We think the evidence is well nigh irrisistible that this experienced electrician did not attempt to connect the wires with the motor, until he know there was a current to enable him to do so properly and successfully. Otherwise he was merely pottering uselessly about the motor. To complete the work it would be necessary for him to tape or insulate the ends of the wires which he should connect, and that he would not be likely to do until he knew by test that the motor would revolve the right way.

Besides, there is undisputed evidence that the deceased warned Mr. Grindal who was on the platform with him of possible danger. Mr. Grindal says that he was on the north end of the platform, and that Mr. Royal said that "I had better move from there," "you can't tell what might happen," or words to that effect. The plaintiff called a witness to rebut the statement of Mr. Grindal. This witness was at work ten feet away. He says he heard the deceased say "Stand back, Mr. Grindal," and that he heard nothing else. It does not matter much which expression was used. Put it either way, it was evidently spoken to warn Mr. Grindal to get away from danger. And there was no danger unless the current was on.

Again it is not without significance that the plaintiff in her original declaration alleged that the deceased attempted to connect the wires with the motor "believing that said wires running into said building carried only a voltage of 550 volts." This plainly indicates her understanding that the deceased believed the current was on. Her claim then was that the wires were overcharged by reason of a leaky transformer.

Upon the whole, then, we must hold upon the evidence and upon all the probabilities, that the deceased knew that the connections outside had been made, that the current was on, and that he undertook to do a dangerous work, without adopting any safeguards. He was an experienced electrician. Experience and familiarity not infrequently breed carelessness. Experienced men, confident of themselves, take chances. They are familiar with danger. They know how to avoid it. They expect always to avoid it. They do not always avoid it. *Perkins* v. *Oxford Paper Co.*, 104 Maine, p. 120. We cannot but think that this unfortunate accident was due to a fatal want of care on the part of the deceased, while engaged in work the dan-

ger of which he knew full well, and had assumed. The direction of a verdict for the defendant was right.

*Plaintiff's exceptions overruled.*