ERNEST L. PIKE *vs.* NORMAN A. SMITH.

Oxford.    Opinion November 23, 1921.

*A presiding Justice should direct a verdict when upon the evidence a different verdict could not be sustained.*

From the testimony in this case the conclusion is inevitable that the parties intended to settle and did settle every claim existing between them under the agreement in writing by them signed under date of October 4, 1917, and that the jury would not have been warranted by the evidence in finding a verdict contrary to the one ordered.

·On exceptions.   An action of assumpsit to recover for labor of plaintiff and wife performed for defendant.   Plea, general issue, with brief statement alleging a special contract, and also a release and discharge in writing.  ·At the close of the testimony upon motion by counsel for defendant,· the presiding Justice ordered a verdict for defendant, and plaintiff excepted.   Exceptions overruled.

Case is stated in the opinion.

*Wilfred G. Conary, and Alton C. Wheeler,* for plaintiff.

*Clifford A. McGlauflin,* for defendant.

SITTING:   CORNISH, C. J., SPEAR, HANSON,· DUNN, DEASY, JJ.

HANSON, J.   This is an action of assumpsit to recover for labor of the plaintiff and his wife from November 20, 1916, to November 20, 1917, at $150 per month.   The writ contained a quantum meruit count and a money count.

After the evidence was taken out, upon motion of defendant's counsel, the presiding Justice directed, a verdict for the defendant. The case is before the court on the plaintiff's exceptions to such order.

It is not disputed that the plaintiff and his wife performed certain labor as stated in the account annexed to the writ, but the defendant pleads the general issue and by way of brief statement

says, "that whatever labor was performed by the plaintiff was performed under a special contract; and that prior to the commencement of this action, to wit, on the fourth day of October, 1917, the said plaintiff by his release, by him signed and sealed with his seal, did release and abandon all his rights under said contract, and thereby did discharge the said defendant from all actions," etc.

On October 21, 1916, the plaintiff and defendant entered into a written agreement, which was later, on the 24th of October, amended by making the plaintiff's wife a party to the agreement, wherein the defendant undertook to finance for them the redemption of the plaintiff's homestead in Waterford. The plaintiff under the agreement conveyed the homestead farm to the defendant, the defendant giving to the plaintiff a bond for a deed. The agreement provided that the defendant should place stock upon the farm, the purpose being to continue the agreement for a series of years, the ownership of the stock remaining in the defendant, the plaintiff having the beneficial use of the same, and an interest in the increase and ultimate sale of the stock.

It is in evidence that Mrs. Pike on November 10 following "told him (defendant) that if we did come, if we didn't stay on the place he had got to pay us, and he agreed to it, said he would." The testimony shows that about two weeks later the plaintiff and his wife removed to the farm. On November 28, part of the stock stipulated for was placed upon the farm, and in January, 1917, the balance of the stock was sent to the farm, following which the parties entered into another contract merging therein the agreement of October 21, 1916.

The new contract contained a list of the horses and cattle placed on the premises, provided that the ownership should be in the defendant, that the plaintiff should care for and feed the cattle, using the hay raised on the farm; also should raise all the offspring of the stock, cut and store the hay each year, and fill the silo each year. The plaintiff was to have the use of the horses and cattle, and the use of the surplus milk from said cattle, the use of all the farming tools on the premises, and the right to use and dispose of all the products raised from said farm, excepting the hay, which which was to be fed on the premises. Provision was made for the sale of cattle and the increase by the defendant, the profits after paying necessary expenses to be credited to the plaintiff and his wife.

It is claimed by the plaintiff that for some reason the contract was not delivered until the last of March, 1917, that the defendant brought the papers, that changes had been made in the meantime in relation to the stock, to his disadvantage, and that he was dissatisfied and told the defendant "I guessed he had better pay us and we get out." He (defendant) says, "You stay here and everything will be all right."

The conversation between plaintiff's wife and defendant, before referred to, and the statement last referred to made by the plaintiff, are relied upon by him to establish a new and special agreement aside from the written agreement herein, and in addition it is urged that the plaintiff used two or three days of his time in helping to drive cattle from Standish to Waterford, and that for these reasons the case should have been submitted to the jury to determine the value of the services in these instances. Finally, counsel urges that plaintiff's claim that changes were made in the contract after signing should have been submitted to the jury, and that therefore the order directing a verdict was erroneous.

As to the conversation with plaintiff's wife, and the item of driving cattle from Standish to Waterford, the first occurring before the preliminary agreement, and the latter occurring before the signing of the agreement of January 27, 1917, both must be held to have been merged in that agreement. In any event the charge for labor of plaintiff's wife cannot be sustained in this action. R. S. Chap. 66, Sec. 3.

The remaining errors assigned relate to: (1) The plaintiff's claim that in March, 1917, the defendant said to him, "You stay here and everything will be all right," and (2) the alleged changes in the contract after signing. That there was disagreement between the parties appears from the testimony of the plaintiff: "Q—Along about October, 1917, you and Mr. Smith had some disagreement, did you not, . . . . A—No, sir; the first disagreement we had in August. Q—Sometime in August? A—Yes, sir. Q—You had your first disagreement? A—Yes, sir. Q—Now at that time Mr. Smith claimed, did he not, that you had forfeited your agreement? A—I don't know what he claimed, he claimed a good deal. Q—I am not asking you about the merits of the thing; I am just asking you if he didn't make that claim to you? A—O, yes. Q—And afterwards he wanted you to leave the premises?

A—Yes, sir. Q—And you refused? A—Of course we did. Q—And Mr. Smith brought an action of forcible entry and detainer against you in the court at Norway in this county? A—Yes. Q—And while that matter was pending you and Mr. Smith and Mr. Pike and myself met at the office of Mr. Wheeler and drew up an agreement marked Exhibit No. 8, Defendant? That is correct, is it not? A—Yes, sir."

The agreement referred to as Defendant's Exhibit No. 8 follows: "Memorandum of Agreement.

This agreement is entered into this fourth day of October, 1917, at South Paris, Maine, by and between Norman A. Smith of Standish in the County of Cumberland and State of Maine on the one part and Ernest L. Pike and Susan S. Pike, both of Waterford, in the County of Oxford and said State on the other part. Norman A. Smith agrees to convey by Quit claim deed all the right, title and interest of himself and his wife Ella M. Smith in the John C. Pike farm so called in said Waterford and the Bell lot so called in the Town of Sweden in said Oxford County to Susan S. Pike upon receipt of the sum of Sixty-five Hundred Dollars ($6500.00) cash and the assumption of all obligation to place a gravestone on the grave of the mother of Ernest L. Pike on or before the first day of November, 1917, and also convey to the said Susan S. Pike the tools on said premises and the hay on the John C. Pike farm and the hay in the Irving Bell barn so called. Said Smith further agrees that the said Ernest L. Pike and Susan S. Pike may remain on said premises until the first day of November, 1917, aforesaid, and that the said Pikes may gather the apples on said premises providing they deliver to him the said Smith one-half of the same.

In case the said Susan S. Pike and Ernest L. Pike do not raise and tender to said Smith the said sum of Sixty-five Hundred ($6500.00) dollars cash, on or before said November 1st, 1917, they hereby agree to quit the said premises without further notice of legal process, leaving all tools and materials on said premises except their own furniture and their proportionate part of the apples and they further agree to surrender and abandon all further claim in and to said premises to the said Norman A. Smith and the said Ella M. Smith. The said Ernest L. Pike and Susan S. Pike hereby further agree to abandon any and all claims in and to any cattle

that have been delivered on said premises by the said Norman A. Smith.

In Witness Whereof the said parties have hereunto affixed their names this said day and date.

<div style="text-align:right">

NORMAN A. SMITH    (seal)

ERNEST L. PIKE      (seal)

SUSAN S. PIKE       (seal)

</div>

Witness:   Clifford E. McGlauflin."

From the testimony the conclusion is inevitable that the parties intended to settle and did settle every claim existing between them —all were included in the agreement of October 4, 1917.

As to the alleged change in the contract while in the hands of the defendant's attorney, examination of the papers discloses that the language of the preliminary contract relating to the cattle, which the plaintiff says has been changed, is identical with that in the contract between the parties under which the work was done.

The main purpose of the second written agreement was ''to carry out the terms of said agreement relative to stocking said farm with young cattle." It clearly appears that the plaintiff was to have the beneficial use of the large stock placed on the farm by the defendant.

The contract made ample provision for his protection, and it nowhere appears that defendant sought to do or did anything to hinder or delay the plaintiff. He was in full charge of a very large stock on a large farm, and had an opportunity to do business as he desired. That he did not succeed does not appear to have been the fault of the defendant.

We are satisfied that the jury would not have been warranted by the evidence in finding a verdict contrary to the one ordered. It is the duty of the presiding Justice to direct a verdict when a verdict to the contrary could not be sustained. *Royal* v. *Bar Harbor and Union River Power Co.*, 114 Me. 220.

The entry will be,

<div style="text-align:right">

*Exceptions overruled.*