EVERETT L. GILES

*vs.*

MARY A. PUTNAM
(Formerly Mary A. Nicholson)
JOHN G. COPE
TRUSTEE

Cumberland. Opinion, March 27, 1954.

*Basil A. Latty,* for Plaintiff.

*Richard S. Chapman,*
*Paul L. Powers,* for Defendant.

SITTING: MERRILL, C. J., THAXTER, FELLOWS, WILLIAMSON, TIRRELL, WEBBER, JJ.

TIRRELL, J.   This is an action brought by the plaintiff against the defendant on a demand promissory note dated August 4, 1947 in the principal amount of $3,000 in which the defendant was a co-signer with her then husband, Norman Nicholson.   The writ contained three counts, the first setting forth the note, the second count being a money count, and the third count setting forth an account annexed. The plaintiff sought to recover the principal sum together with interest thereon at the legal rate.

The defendant filed an affidavit of belief that the signature of the defendant on the note was not genuine or

authorized, but later at the trial, acknowledged that the signature was hers.

The case went to trial on the defendant's plea of general issue. Trial was had before a jury at the March 1953 term of Cumberland County Superior Court and the jury returned a verdict for the defendant.

At the close of all the evidence, plaintiff moved for a directed verdict on the ground that his prima facie case had not been rebutted by any evidence introduced by defendant. To the ruling of the judge denying this motion plaintiff objected and based his bill of exceptions thereon.

The evidence revealed that the defendant and her then husband signed a demand promissory note identified as Plaintiff's Exhibit 1, in the sum of $3,000, dated August 4, 1947.

At the time the note was signed by defendant the payee's name had not been filled in. There is a dispute as to whether the date and amount had been filled in before defendant signed, she having testified that it was blank as to these items and her former husband having testified that the note was complete, except for the payee's name, when defendant signed.

In any event the plaintiff received the note dated August 4, 1947 and filled in his own name as payee. On August 5, 1947 plaintiff drew his check in the amount of $3,000 to the order of defendant's husband.

The funds were used by defendant's husband in the conduct of his cleaning business and were never repaid. In June 1948 defendant's husband filed a voluntary petition in bankruptcy. Defendant and her husband were divorced in March 1951.

The uniform negotiable instrument act was first passed by the legislature, Chap. 257, P. L., 1917, and is entitled

"An Act to Make Uniform the Law of Negotiable Instruments."

The issue is to be determined by the language of Chap. 174, Sec. 14, of the Revised Statutes of Maine, 1944, as follows:

> "Where the instrument is wanting in any material particular, the person in possession thereof has a prima facie authority to complete it by filling up the blanks therein. And a signature on a blank paper delivered by the person making the signature in order that the paper may be converted into a negotiable instrument operates as a prima facie authority to fill it up as such for any amount. In order, however, that any such instrument when completed may be enforced against any person who became a party thereto prior to its completion, it must be filled up strictly in accordance with the authority given and within a *reasonable time*. But if any such instrument, after completion, is negotiated to a holder in due course, it is valid and effectual for all purposes in his hands, and he may enforce it as if it had been filled up strictly in accordance with the authority given and within a reasonable time." (emphasis ours)

There were questions of fact in issue for the jury to decide, namely when the note in question was delivered to the plaintiff and by whom it was delivered.

It is true that under Sec. 14, Chap. 174, R. S., 1944 the person in possession of the instrument, when such instrument is wanting in any material particular, he, the person in possession, has a *prima facie* authority to complete it by filling up the blanks therein.

The words *prima facie* are —

> "Latin words which have, by long usage, become a part of the English language, and the meaning of which is readily understood by a person of common understanding. They are words of very com-

mon use in the courts and in newspaper reports of judicial decisions, and they import that the evidence produces for the time being a certain result, but that the result may be repelled. They have been defined as meaning apparent. They have further been defined as meaning as it first appears; at first sight; at first view; on its face; on the face of it; on the first appearance; presumably; so far as can be judged by the first disclosure." (C. J. S. 72, Sec. 55)

What is a reasonable time is a mixed question of law and fact. When the facts are in dispute it is for the jury to decide what the facts are and apply the law relative thereto as instructed by the court.

The fact of the date of delivery of the note in question is in controversy and is one question of fact for the jury to decide. Also, a question of fact for decision by the jury was when the blanks were *filled up,* for the statute reads that such blanks must be filled up within a *reasonable time.* It is therefore important for the jury to know at what time the note came into possession of the plaintiff so as to enable him to fill up the blanks within a reasonable time.

In reading the transcript we note that plaintiff claims delivery of the note on August 5, 1947 at the home of defendant but defendant denies any knowledge of delivery at such place or date.

We note with interest that at the time the defendant's former husband had a bankruptcy petition prepared by an attorney an investigation was made by this attorney to learn something of any indebtedness of the petitioner to the plaintiff in this case. We quote direct from the record a part of the testimony given under oath by the attorney who was preparing the bankruptcy schedules and attempting to learn the true facts of any indebtedness between his then client and this plaintiff, in May 1948.

"A.   Mr. Giles came into my office, I had known him for some time, and said that Mr. Nicholson and his wife had suggested that he come in and talk about the money which *Mr.* Nicholson owed him.   I had, previous to that occasion, learned about the $3,000-*loan* to Mr. Nicholson.   Mr. Giles told me at that time that they had suggested to him that if he were interested in putting more money into Mr. Nicholson's business and become either a partner or stockholder in it, he might, by doing that, salvage or save his $3,000.   And I asked him what he had to show for the $3,000. He said: *'All I have is my cancelled check.'*  I expressed my amazement to him and said: 'You mean you have nothing beyond that to show for the loan?'   He said; 'Nothing.'   And I said: 'I don't understand how you could take the chance.' And he told me he had been a friend of the family for several years, lived with Mr. Nicholson's mother, that he had done it as a friend to Norman Nicholson and that he had decided not to put any more money into it, but rather to suffer the loss, which seemed apparent to him at the time." (Emphasis ours)

Surely all of this testimony was within the province of the jury to weigh in its endeavor to find the truth and the true situation.

This court said in *Hill* v. *Hobart,* 16 Me. 164, 168, 169:

"Where the facts are clearly established, or are undisputed, or admitted, reasonable time is a question of law.   But where what is a reasonable time depends upon certain other controversial points, or where the motives of the party enter into the question, the whole is necessarily to be submitted to a jury, before any judgment can be formed, whether the time was or was not reasonable."

Also in *Greene* v. *Dingley,* 24 Me. 131, 137:

"Another ground of exception is, that the question, whether the tender and demand of the steers were

made in a reasonable time, was left to the jury. This was a question of law upon the facts, of which facts the jury were the judges. It often happens, that facts are in dispute, and *what is reasonable time,* is a mixed question of law and fact."

*Lucius R. Williams* v. *Frederick A. Sweet,* 121 Me. 118, 120:

"The province of a jury is to decide debatable questions of fact. Where, from all the facts, it is manifest that a single conclusion only would be consistently sustainable, the canon of the law imports the duty that the sitting Justice shall instruct the returning of a verdict proper to the circumstances. The reason is in the principle that prevention is better than cure. *Heath* v. *Jaquith,* 68 Maine, 433; *Jewell* v. *Gagne,* 82 Maine, 430; *Coleman* v. *Lord,* 96 Maine, 192; *Reed* v. *Reed,* 113 Maine, 522; *Royal* v. *Bar Harbor Water Company,* 114 Maine, 220."

*Royal* v. *Bar Harbor and Union River Power Company,* 114 Me. 220, 221:

"It is well settled that in considering exceptions to the direction of a verdict, the only question is whether the jury would have been warranted by the evidence to find a verdict contrary to the one ordered. If a verdict to the contrary could not be sustained, it is the duty of the presiding Justice to direct the verdict. If such a verdict would be sustainable, the issue of fact should be submitted to the jury. *Horigan* v. *Chalmers Co.,* 111 Maine, .111; *Johnson* v. *N.Y., N. H. & H. R.R.,* 111 Maine, 263; *Shackford* v. *N. E. Tel. & Tel. Co.,* 112 Maine, 204."

The presiding justice ruled correctly in refusing to direct a verdict for the plaintiff, and plaintiff's exceptions to the refusal to direct a verdict for plaintiff avail him nothing.

What has been said above refers not only to the exception to the refusal to direct a verdict but applies as well to

the plaintiff's "general motion for a new trial." The jury passed on all questions of fact under proper legal instructions given it by the justice presiding and returned into court a verdict for the defendant. That a jury verdict based on evidence on both sides should not be disturbed, unless so manifestly erroneous as to make it apparent that it was produced by prejudice, bias, or mistake of law or fact, has been so universally held by this court that citations are unnecessary.

We therefore conclude that the exceptions of the plaintiff as to the refusal of the presiding justice to direct a verdict for the plaintiff are overruled and the plaintiff's motion for a new trial is denied.

The entry will be

> *Exceptions overruled.*
>
> *Motion denied.*
>
> *Judgment for the defendant with costs to be taxed by the Clerk of the Superior Court for the County of Cumberland.*